UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| PRIMELENDING, a PlainsCapital Company, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

The United States of America alleges:

1. This action is brought by the United States to enforce the provisions of the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA").

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1345, 42 U.S.C. § 3614, and 15 U.S.C. § 1691e(h). Venue is appropriate pursuant to 28 U.S.C. § 1391.

3. PrimeLending, a Texas corporation, is a wholly-owned subsidiary of PlainsCapital Bank, a bank chartered by the Texas Department of Banking and a member of the Federal Reserve System. PlainsCapital Bank is a wholly-owned subsidiary of PlainsCapital Corporation. PrimeLending's principal place of business is 2323 Victory Avenue, Suite 1400, Dallas, Texas, and it is subject to the regulatory authority of the Federal Reserve System.

4. PrimeLending is a residential mortgage lender offering conventional prime loans and loans guaranteed by the Federal Housing Administration and Department of Veterans Affairs. It operates through a retail model of accepting applications and originating loans using its own employees. Although its lending continues to be concentrated most heavily in Texas,

-1-

particularly in the Dallas market, it had expanded by the end of 2009 to operate 168 offices in 32 states.  In 2009, PrimeLending originated more than 30,000 loans secured by residential real estate, with an aggregate principal value of more than $5.5 billion, and it was one of the 20-largest lenders in the Federal Housing Administration loan program.

5.  PrimeLending is subject to Federal laws governing fair lending, including the FHA and the ECOA and the regulations promulgated under each of those laws.  The FHA and the ECOA prohibit financial institutions from discriminating on the basis of, *inter alia*, race in their lending practices.  Charging higher prices for loans on the basis of race, including charging higher annual percentage rates of interest, is one of the discriminatory lending practices prohibited by the FHA and the ECOA.

6.  PrimeLending is a "creditor" within the meaning of the ECOA, 15 U.S.C. § 1691a(e), and engages in "residential real estate-related transactions" within the meaning of the FHA, 42 U.S.C. § 3605.  PrimeLending also is subject to the Home Mortgage Disclosure Act, 12 U.S.C. § 2803, which requires mortgage lenders to maintain data on the race of each borrower.

7.  Beginning in 2008, the Federal Reserve System conducted an examination of the lending practices of PrimeLending to evaluate compliance with, among other laws, the FHA and the ECOA.  Based on analysis of the annual percentage rates of interest that PrimeLending charged in 2006 and 2007 for conforming fixed-rate loans secured by residential real estate and for loans guaranteed by the Federal Housing Administration and Department of Veterans Affairs secured by residential real estate (collectively, "the examined loan products"), the Federal Reserve System found reason to believe that PrimeLending had displayed a pattern or practice of discrimination on the basis of race against African-American borrowers.  Further, the Federal

Reserve System found that PrimeLending did not have robust fair lending controls.  On

December 15, 2009, following the examination described above, the Board of Governors of the

Federal Reserve System referred the lending practices of PrimeLending to the United States

Department of Justice pursuant to 15 U.S.C. § 1691e(g).

8.  PlainsCapital Corporation has disclosed in a public securities filing that the Federal

Reserve in the spring of 2010 gave PlainsCapital Bank a "needs to improve record of meeting

community credit needs" rating under the Community Reinvestment Act, 12 U.S.C. § 2906, as a

result of alleged fair lending issues associated with PrimeLending.

9.  After receiving the referral from the Board of Governors of the Federal Reserve

System, the United States Department of Justice analyzed the annual percentage rates of interest

that PrimeLending charged between 2006 and 2009 for the examined loan products.

10.  Between at least 2006 and 2009, PrimeLending gave its employees wide discretion to

charge "overages" or accept "underages" that raised or lowered, respectively, the annual

percentage rate of interest paid by borrowers from the "par" interest rate at which PrimeLending

would originate the loan.  These par rates were communicated to employees through the daily

distribution of "ratesheets."  PrimeLending did not monitor or separately record overage or

underage data for those years.

11.  The compensation of PrimeLending's employees was, in part, based on their ability

to charge overages and avoid accepting underages.  Prior to 2010, PrimeLending did not

establish objective criteria to be followed by employees in charging overages or accepting

underages.  Moreover, prior to 2010, it did not require employees to document the reasons for

charging overages or accepting underages, it did not monitor whether discrimination based on

race occurred through the inclusion of overages and underages, and it did not offer detailed fair lending training to its employees.

12.  Between 2006 and 2009, PrimeLending charged higher loan prices to African-American borrowers, as measured through the annual percentage rates of interest for the "examined loan products," than it charged to similarly-situated white borrowers.  The differences in the annual percentage rates of interest charged to African-Americans borrowers for the "examined loan products" and those charged to white borrowers cannot be explained fully by factors unrelated to race.

13.  In each year between 2006 and 2009, PrimeLending charged annual percentage rates of interest between 11 and 14 basis points[1] higher nationwide to African-Americans who obtained conforming fixed-rate loans secured by residential real estate than the annual percentage rate of interest charged to similarly-situated whites, after accounting for all the credit risk factors (such as credit score, loan-to-value ratio, and property type) that PrimeLending's ratesheets used to set the par rate.  These disparities are statistically significant, and mean that an African-American borrower who took out a $200,000 loan of this type, on average, annually paid approximately $220 to $280 more in interest than a similarly-situated white borrower during each year that he or she remained in the loan.

14.  In each year between 2006 and 2009, PrimeLending charged annual percentage rates of interest between 5 and 11 basis points higher nationwide to African-Americans who obtained loans guaranteed by the Federal Housing Administration and Department of Veterans Affairs secured by residential real estate than the annual percentage rate of interest charged to similarly-situated whites, after accounting for all the credit risk factors that PrimeLending's ratesheets

---

[1]  One basis point represents one hundredth of a percentage point (0.01%).

used to set the par rate.  These disparities are statistically significant, and mean that an African-American borrower who took out a $200,000 loan of this type, on average, annually paid approximately $100 to $220 more in interest than a similarly-situated white borrower during each year that he or she remained in the loan.

15.  Between 2006 and 2009, PrimeLending made nearly 3,300 loans to African-American borrowers that involved the examined loan products with statistically significant pricing disparities.  These disparities will result in African-American borrowers continuing to pay additional interest because of race in each monthly mortgage payment they make until the loan is paid off, as many as 30 years in the future.

16.  The higher annual percentage rates of interest that PrimeLending charged to African-American borrowers for "the examined loan products" are a result of PrimeLending's policy or practice of giving its employees wide subjective discretion in charging overages and accepting underages that altered the annual percentage rate of interest for a loan.

17.  PrimeLending's policy or practice of giving its employees wide subjective discretion in charging overages and accepting underages that altered the annual percentage rate of interest for a loan have had a disparate impact on African-American borrowers compared to similarly-situated white borrowers.

18.  PrimeLending's policy or practice of giving its employees wide subjective discretion in charging overages and accepting underages is not justified by business necessity or legitimate business interests.

19.  PrimeLending's actions, policies and practices, as alleged herein, constitute:

a. Discrimination on the basis of race in making available, or in the terms or conditions of, residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a);

b. Discrimination on the basis of race in the terms, conditions, or privileges of the provision of services in connection with sale of a dwelling, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b); and

c. Discrimination against applicants with respect to credit transactions on the basis of race in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1).

20.  PrimeLending's actions, policies and practices, as alleged herein, constitute:

a. A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f; and

b. A denial of rights granted by the Fair Housing Act to a group of persons that raises an issue of general public importance.

21.  Persons who have been victims of PrimeLending's discriminatory actions, policies and practices are aggrieved persons as defined in the FHA, 42 U.S.C. § 3602(i), and aggrieved applicants as defined in the ECOA, 15 U.S.C. § 1691e, and have suffered injury and damages as a result of PrimeLending's violation of both the FHA and the ECOA.

22.  PrimeLending's pattern or practice of discrimination has been intentional and willful, and has been implemented with reckless disregard for the rights of African-American borrowers.

WHEREFORE, the United States prays that the Court enter an ORDER that:

23.  Declares that the policies and practices of the Defendant constitute violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f;

24.  Enjoins the Defendant, its agents, employees, and successors, and all other persons in active concert or participation with it, from:

   a.  Discriminating on the basis of race against any person in making available, or in the terms or conditions of, a residential real estate-related transaction;

   b.  Discriminating on the basis of race in the in the terms, conditions, or privileges of the provision of services in connection with the sale of dwellings;

   c.  Discriminating on the basis of race against any person with respect to any aspect of a credit transaction;

   d.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendant's unlawful conduct to the position they would have been in but for the discriminatory conduct; and

   e.  Failing or refusing to take such actions as may be necessary to prevent the recurrence of any such discriminatory conduct in the future.

25.  Awards monetary damages to all the victims of the Defendant's discriminatory policies and practices for the injuries caused by the Defendant, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h); and

26.  Assesses a civil penalty against the Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General


THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division


JAMES T. JACKS
United States Attorney

STEVEN H. ROSENBAUM
Chief
Housing and Civil Enforcement Section


JOHN R. PARKER
Civil Chief
Texas Bar Number 00784721
1100 Commerce Street, 3rd Floor
Dallas, Texas 75242
Email: John.Parker@usdoj.gov
Telephone: 214-659-8600
Fax: 214-659-8800

JON M. SEWARD
Deputy Chief


DANIEL P. MOSTELLER
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave. NW - NWB
Washington, D.C. 20530
Email: Daniel.Mosteller@usdoj.gov
Telephone: 202-305-0053
Fax: 202-514-1116