

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-02494-P |
| | ) | |
| PRIMELENDING, a PlainsCapital Company, | ) | |
| Defendant. | ) | |
| | ) | |

## CONSENT ORDER

### I. INTRODUCTION

This Consent Order (Order) is submitted jointly by the parties for the approval of and entry by the Court simultaneously with the filing of the United States' complaint (Complaint) in this action. The Order resolves the claims of the United States that the Defendant, PrimeLending, has engaged in a pattern or practice of conduct in violation of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, by charging African-American borrowers higher annual percentage rates of interest for certain fixed rate loans and certain loans guaranteed by the Federal Housing Administration and Department of Veterans Affairs secured by residential real estate than charged to non-Hispanic white borrowers between 2006 and 2009. Defendant denies that it discriminated unlawfully in setting loan prices.

Defendant has altered its pricing policy prior to the entry of this Order, and, under the provisions of the Order, the Defendant agrees to continue to implement policies and procedures designed to ensure that the price charged for its residential loan products, including the portion of the price that reflects the discretion of the loan officer or any other company employee, is set in a

nondiscriminatory manner consistent with the requirements of the FHA and the ECOA. In addition, the Defendant will compensate certain African-American borrowers.

There has been no factual finding or adjudication with respect to any matter alleged by the United States. The parties have entered into this Order to avoid the risks and burdens of litigation, and to resolve voluntarily the claims in the United States' Complaint relating to Defendant's alleged violations of fair lending laws.

## II. <u>BACKGROUND</u>

PrimeLending is a wholly-owned subsidiary of PlainsCapital Bank, a bank chartered by the Texas Department of Banking and a member of the Federal Reserve System. PrimeLending's principal place of business is Dallas, Texas.

PrimeLending engages in retail mortgage lending. Historically, the company has largely concentrated its lending in Texas, particularly Dallas, but has opened other branches throughout the country in more recent years. It originated more than 30,000 loans secured by residential real estate in 2009, and, at the end of 2009, it originated these loans through employees who worked in 168 offices located in 32 states. PrimeLending has rapidly expanded its operations over the past several years, with originations of loans secured by residential real estate more than tripling between 2007 and 2009. Consistent with other mortgage lenders, the company's volume of loans guaranteed by the Federal Housing Administration has grown at an even more rapid clip over that period, with an increase from under 1,500 such loans in 2007 to nearly 15,000 in 2009.

Prior to 2010, PrimeLending did not limit the discretion of its employees to charge "overages" or accept "underages," which could influence the overall price of the loan. Par prices, the price of the loan before any overage or underage, were communicated to employees through the daily distribution of "ratesheets." Prior to 2010, PrimeLending did not require its employees to document the reasons for charging overages or accepting underages. The compensation of

PrimeLending's employees was, in part, based on their ability to charge overages and avoid accepting underages.

The Federal Reserve System began in 2008 to examine the lending practices of PrimeLending to evaluate compliance with, among other laws, the FHA and the ECOA. The Federal Reserve System analyzed the annual percentage rates (APR) of interest charged for certain fixed rate and government-guaranteed loans secured by residential real estate that PrimeLending originated in 2006 and 2007. Although PrimeLending did not monitor or separately record overage or underage data for those years, the APR, in part, reflects the discretionary portion of the loan price. The Federal Reserve System found reason to believe that PrimeLending had displayed a pattern or practice of charging African-American borrowers higher annual percentage rates of interest than non-Hispanic white borrowers that, in the agency's view, could not be explained fully by factors unrelated to race. Further, the Federal Reserve System found that PrimeLending did not have robust fair lending controls.

The Board of Governors of the Federal Reserve System referred this matter to the United States Department of Justice on December 15, 2009 for appropriate enforcement pursuant to 15 U.S.C. § 1691e(g). In addition to the information obtained from the Federal Reserve System, the United States reviewed the annual percentage rates of interest charged for certain fixed rate and government-guaranteed loans secured by residential real estate that PrimeLending originated between 2006 and 2009. The Defendant promptly approached the United States to seek a mutually agreeable resolution of this matter, and it cooperated in good faith with the United States throughout its inquiry.

Both parties have agreed to the entry of this Order to resolve voluntarily the claims asserted by the United States in order to avoid the costs, risks, and burdens of litigation.

### III. MODIFICATION OF LOAN PRICING AND MONITORING PRACTICES

Subsequent to the referral from the Federal Reserve System, PrimeLending altered its loan pricing policy to advance fair lending compliance. The company began to measure the discretionary portion of the price of each loan so that overages and underages could be determined and monitored to ensure that any deviations from the starting price are not based on factors prohibited by the FHA or the ECOA.

The company adopted a pricing policy that limits overages to 100 basis points (1.00% of the loan principal) and requires written explanations from loan officers for all overages and underages that exceed 50 basis points (0.50% of the loan principal). The company hired outside economists to evaluate loan pricing to borrowers of different races and ethnicities to ensure that pricing was being effectuated without regard to impermissible factors.

PrimeLending officials consult with regional managers and branch managers to ensure uniform compliance with fair lending standards. The company has developed a national training program to ensure that the pricing policy is understood by all employees who interact with consumers or otherwise are involved in the loan pricing or loan approval process.

### IV. REMEDIAL ORDER

1.      Unless otherwise stated herein, the remedial provisions of this Order shall be implemented within 30 days of the Effective Date of this Order and shall continue throughout its term. The Effective Date of this Order shall be the date on which it is approved and entered by the Court.

#### A.      General Nondiscrimination Injunction

2.      The Defendant, including all of its officers, employees, agents, assignees, successors in interest, and all those in active concert or participation with any of them, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race in any aspect

of a residential real estate-related transaction in violation of the Fair Housing Act, 42 U.S.C. §§ 3604 and 3605, or in any aspect of a credit transaction in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1). This prohibition includes, but is not limited to, the adoption, performance, or implementation of any policy, practice, or act that results in race discrimination in the charging of loan prices, including the portion of the loan price that reflects the discretion of the loan officer or any other company employee, to those who borrow money secured by residential real estate.

**B.    Lending Policies and Procedures**

3.    Until April 1, 2011, the Defendant shall continue to follow the pricing policy described above that limits overages to 100 basis points. Effective April 1, 2011, in accordance with the Federal Reserve System Regulation Z, 12 C.F.R. § 226.36(d), the Defendant shall prohibit its employees from receiving, directly or indirectly, overages or other compensation in an amount that is based on any of the terms or conditions of a loan secured by residential real estate, including the annual percentage rate of interest charged to the borrower or the amount by which it varies from the par rate. This prohibition shall not limit compensation that is based on the principal amount of a loan, provided the compensation is based on a fixed percentage of the principal; however, such compensation may be subject to a minimum or maximum dollar amount. This prohibition also shall not limit the Defendant from allowing a borrower to finance, at the option of the borrower, including through principal or rate, any origination fees or costs, so

long as such fees or costs do not vary based on the terms of the loan (other than the amount of the principal) or the borrower's decision about whether to finance such fees or costs.[1]

4.    Within 30 days of the Effective Date of this Order, the Defendant shall set specific, nonracial standards for the assessment of all origination fees and costs it charges and retains for itself or pays to its employees on loans secured by residential real estate. To the extent it allows discretion in the amount of these fees and costs, loan officers will provide a written explanation for all discretionary amounts charged that result in overages or underages that exceed 50 basis points.

5.    The Defendant shall require all employees who originate loans secured by residential real estate to comply with the requirements established in Paragraphs 3-4. The Defendant shall also require an appropriate manager, under the supervision of a designated senior official of the Defendant, to review compliance with these requirements, including the existence of a legitimate nondiscriminatory reason for any overage or underages that exceeds 50 basis points and ensuring that discretionary loan prices do not vary materially by race or ethnicity. Any loan that is not in compliance with these requirements may not be funded. In the event that a loan inadvertently is funded in material violation of the policy, an appropriate refund will be provided to the borrower. All reviews shall be documented and kept in the loan file.

---

[1]  No term of this Consent Order will be interpreted to prevent the Defendant from complying with any federal statutory or regulatory requirement concerning loan officer compensation or loan pricing. In the event that the federally scheduled implementation of Regulation Z is modified, Defendant may continue with its current loan pricing policy pending the effective date of any modified provisions, but will remain under the obligation to ensure nondiscrimination as required by this Consent Order.

**C.      Monitoring Program**

6.        The Defendant shall maintain its currently existing level of fair lending auditing and monitoring staff and systems for the term of this Order.

7.        Within 30 days of the Effective Date of this Order, the Defendant shall have in place a monitoring program designed to ensure compliance with this Order. The program shall be designed to monitor loans secured by residential real estate originated by its employees for potential racial disparities in the price charged for its residential loan products. At a minimum, the Defendant shall monitor APRs and overages and underages. The program also shall require a quarterly review by senior managers. Each such quarterly review shall be documented and presented to the Defendant's Board of Directors for review and approval not later than 60 days after the end of each quarter. Each quarterly review shall include, but not be limited to, an analysis designed to detect, both at the national and metropolitan (MSA) level, significant racial disparities in the price charged for its residential loan products, with respect to all loans secured by residential real estate originated by the Defendant.

a.        In the event that any such review discloses significant disparities at the national level or in any MSA, the Defendant shall attempt to determine the reason(s) for those disparities and shall promptly take corrective action to address significant disparities that were attributable to a policy or practice of the Defendant, and not justified by legitimate business need. Corrective action shall include, as warranted, financial remediation for borrowers, modifications to the Defendant's pricing policies and/or monitoring programs as appropriate, and education, discipline or termination of employee(s). Defendant shall document all such disparities, determinations, and actions taken and shall provide a summary of the quarterly reviews and any documentation and analysis relating thereto to the United States on a quarterly basis.

b.    In the event that any such review discloses significant disparities with respect to any particular employee or branch, the Defendant shall require the employee or branch manager to explain the non-discriminatory reason(s) for those disparities. If there is no reasonable, nonracial explanation for the noted disparities, the Defendant shall require the employee or branch manager to take prompt corrective action to address the disparities.

If the United States raises any objections to the Defendant's determinations or remedial actions, the Defendant and the United States shall meet and confer to consider appropriate steps to address the concerns raised by the United States' review. If the parties are unable to come to an agreement regarding such objections, any party may bring the dispute to this Court for resolution.

**D.    Notification to the United States and Right to Object**

8.    The Defendant shall provide a copy of the policies it utilizes to implement Paragraphs 3-5 of this Order and descriptions of the monitoring programs required under Paragraphs 6-7 to the United States within 30 days of the Effective Date of this Order.[2] The United States shall have 30 days from receipt of the policies and descriptions to raise any objections to them, and if it raises any, the parties shall confer to resolve their differences. In the event they are unable to do so, either party may bring the dispute to this Court for resolution.

---

[2] All material required by this Order to be sent to counsel for the United States shall be sent by commercial overnight delivery service addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street NW, Suite 7002, Washington, DC 20006, Attn: DJ 188-73-10, or by facsimile to 202-514-1116.

### E.    Borrower Notices

9.    The Defendant shall post and prominently display in each location where loan applications are received by the Defendant a notice of nondiscrimination (a sample of which is attached as Appendix A).

10.    The Defendant shall require its employees who originate loans secured by residential real estate to provide the following disclosures to applicants, to the extent not inconsistent with applicable law: (a) the full amount of the origination fees and costs it charges, and whether such fees and cost are negotiable between the originator and borrower, and (b) a notice of non-discrimination that provides substantially the same information as is contained in Appendix A. Such disclosures shall be in writing, signed by the originator and the borrower (if the borrower executes), and submitted by the originator to be made part of the loan file by the Defendant. This disclosure shall be made as early as practicable but not later than 48 hours prior to the closing of the loan.

### F.    Equal Credit Opportunity Training Program

11.    Within 90 days of the Effective Date of this Order, the Defendant shall provide equal credit opportunity training to its management officials, loan officers, and any other employees or agents who participate in the origination of loans secured by residential real estate. During this training, the Defendant shall provide to each participant: (a) access to a copy of this Order and the loan policies adopted pursuant to it; and (b) training on the terms of this Order, the loan policies adopted pursuant to it, the requirements of the FHA, the ECOA, and his or her responsibilities under each. During the term of this Order, the Defendant shall provide annual equal credit opportunity training to covered employees with respect to his or her responsibilities and obligations under the FHA, the ECOA, and this Order.

12.     The Defendant shall secure from each employee or agent specified in the preceding paragraph a signed statement acknowledging that he or she has received access to a copy of this Order and the loan policies and has completed the initial equal credit opportunity training. The signature of the acknowledgement may be either manual or electronic. These statements shall be substantially in the form of Appendix B (Acknowledgment) and Appendix C (Equal Credit Opportunity Training). During the term of the Order, each new employee or agent whose responsibilities include those set forth in Paragraph 11, shall be provided access to a copy of this Order and given an opportunity to have any questions answered, and shall sign the acknowledgment form statement (Appendix B) within 10 days of beginning his or her employment in that position.

13.     The content of the training program required by this Section shall be approved in advance by the United States. Any expenses associated with this training program shall be borne by the Defendant.

**G.     Satisfaction of United States' Claims for Monetary Relief**

14.     The Defendant shall deposit in an interest-bearing escrow account the total sum of $2.0 million to compensate for monetary damages aggrieved persons nationwide may have suffered as a result of the alleged violations of the FHA and the ECOA (the "Settlement Fund"). Title to this account shall be in the name of "PrimeLending for the benefit of aggrieved persons pursuant to Order of the Court in Civil Action No. [xxx]". The Defendant shall provide written verification of the deposit to the United States within five days of the Effective Date of this Order. Any interest that accrues shall become part of the Settlement Fund and be utilized and disposed of as set forth herein.

15.     Within 30 days of the Effective Date of this Order, the United States shall request any information it believes will assist in identifying aggrieved persons and determining any

damages. The Defendant shall, within 30 days of receipt of such request, supply, to the extent that it is within the Defendant's control, such information as requested. Requested data may be supplied as a supplement to the database already provided to the United States by the Defendant in the course of the United States' inquiry. To the extent that the information is not within the Defendant's control, the Defendant shall, within 30 days of receipt of such request, supply any data in its control that identifies other parties that may have that information.

16.     The United States shall, upon reasonable notice, be allowed access to the Defendant's records and files to verify the accuracy of the data provided and to otherwise identify persons entitled to the payments from the Settlement Fund.

17.     Within 90 days of the Effective Date of this Order, the United States shall provide to the Defendant a list of aggrieved persons and an amount each individual shall receive from the Settlement Fund to compensate for monetary damages these persons may have suffered, subject to the conditions set forth in Paragraph 18. The Defendant shall have 30 days from receipt of such list in which to review the list and the United States shall consider in good faith any issues raised by the Defendant.

18.     Payments from the Settlement Fund to aggrieved persons shall be subject to the following conditions, provided that the details in administration of the Settlement Fund set forth in Paragraphs 19-20, can be modified by agreement of the parties and without further Court approval:

(a)     No aggrieved person shall be paid any amount from the Settlement Fund until he or she has executed and delivered to the Defendant a written release, as set forth in Appendix D, of all claims, legal or equitable, that he or she might have against the released persons and

entities regarding the claims asserted by the United States in this lawsuit, so long as such claims accrued prior to the entry of this Order; and

      (b)      The total amount paid by the Defendant collectively to the aggrieved persons shall not exceed the amount of the Settlement Fund, including accrued interest.

      19.      The Defendant shall, no later than 45 days after receiving the compensation list referred to in Paragraph 17, notify each identified person eligible for compensation by a letter (using its best efforts to locate each person). The form of this letter shall be subject to the review and approval of the United States. At a minimum, the letter shall state that the identified person is eligible for compensation in the indicated amount provided he or she executes and returns to the Defendant a copy of the agreed-upon release, which release shall be enclosed with the notice along with an addressed and postage-paid return envelope. Each letter shall identify the loan(s) the Defendant originated to the identified person. The letter shall explain the complaint resolution program referenced in Paragraph 22 of this Order. If the parties are unable to agree on the terms of the letter, any party may bring the dispute to the Court for resolution. Any letters that are returned with a forwarding address shall promptly be re-sent to that new address. The Defendant shall provide an accounting of these notifications, indicating the name and address to which each was dispatched, within the 45-day period referred to in this paragraph.

      20.      The Defendant shall issue checks in the amount indicated on the compensation list to all identified persons who execute and return the releases. The Defendant shall issue and mail such checks no later than 21 days after the receipt of the release. The Defendant shall set forth reasonable deadlines for requirements of return of releases, and for the timely deposit of checks, subject to approval of the United States, so that the compensation is distributed and checks are presented for payment or become void prior to the date that is one year from the date the initial

notifications are sent. The Defendant shall provide, as part of the reporting required in Paragraph 26, an accounting of releases received, checks sent, and notifications for which no response has been received or that were reported to be undeliverable. The United States may make its own efforts to locate aggrieved persons.

### H.    Consumer Education

21.    Any moneys not distributed from the Settlement Fund including accrued interest within one year of the date the initial notifications are sent to persons deemed to be aggrieved by the United States shall be distributed to qualified organization(s) to provide credit counseling, financial literacy, and other related educational programs targeted at African-American borrowers. The Defendant will consult with and obtain the non-objection of the United States in selecting recipient(s) of these funds, and the parties shall obtain the Court's approval prior to distribution of the fund. To the maximum extent practicable, these funds shall be directed to organizations that work with borrowers living in the Dallas, Houston, Fort Worth, and Raleigh MSAs, where the Defendant originated its highest volume of loans to African-American borrowers in 2009.

### I.    Complaint Resolution Program

22.    In addition to the above, during the period of this Order the Defendant shall maintain a robust complaint resolution program to address consumer complaints alleging discrimination regarding loans secured by residential real estate originated by the Defendant. Documentation regarding such complaint resolution program, including documentation of individual complaints and resolutions, if any, shall be made available to the United States on a quarterly basis and included in the semi-annual reports referenced in Paragraph 25. A person shall not be deemed ineligible for the complaint resolution program on the basis of having

executed the release described in Paragraph 18(a), but there is no requirement under this Order that any complaint necessarily be resolved for or against the Defendant.

## V. EVALUATING AND MONITORING COMPLIANCE

23.      For the duration of this Order, the Defendant shall retain all records relating to its obligations hereunder as well as its compliance activities as set forth herein. The United States shall have the right to review and copy such records upon request, including loan files and electronic data for loans secured by residential real estate made during the period of this Order.

24.      The Defendant shall provide to the United States the data on its lending that is submitted to the Federal Financial Institutions Examination Council (FFIEC) pursuant to the Home Mortgage Disclosure Act and the Community Reinvestment Act. The data will be provided in the same format in which it is presented to the FFIEC, within 30 days of its submission to the FFIEC each year, for the duration of this Order, including the record layout.

25.      In addition to the submission of any other plans or reports specified in this Order, the Defendant shall submit semi-annual reports to the United States on its progress in completing the requirements of this Order. Each such report shall provide a complete account of the Defendant's actions to comply with each requirement of this Order during the previous six months, an objective assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting its goal for the previous six months, and any recommendations for additional actions to achieve the goals of this Order. The Defendant shall submit its first report no later than 180 days after the Effective Date of this Order, and every 180 days thereafter for so long as the Order is in effect. In addition, if applicable, the Defendant shall attach to the semi-annual reports representative copies of training materials disseminated pursuant to this Order.

## VI. **ADMINISTRATION**

26.    The Order shall terminate three months after the submission of the Defendant's eighth semi-annual report due under Paragraph 25 to the United States. Notwithstanding the above, this Order may be extended further upon motion of the United States to the Court, for good cause shown.

27.    Any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties. Except as provided by Paragraph 18, other modifications to this Order may be made only upon approval of the Court, upon motion by either party. The parties recognize that there may be changes in relevant and material factual circumstances during the term of this Order which may impact the accomplishment of its goals. The parties agree to work cooperatively to discuss and attempt to agree upon any proposed modifications to this Order resulting therefrom.

28.    This Order shall be binding on the Defendant, including all its officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with any of them. This Order shall consider employees of joint ventures operated by the Defendant, and the loans they originate, to be employees of the Defendant and to be loans originated by employees of the Defendant. This Order also shall consider loans to be originated by employees of the Defendant even when origination functions are completed by contractors. In the event the Defendant seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar use, as a condition of sale, the Defendant shall obtain the written accession of the successor or assign to any obligations remaining under this Order for its remaining term.

29.    The Defendant represents it does not currently originate loans secured by residential real estate through mortgage brokers and does not currently plan to do so during the term of this Order. During the term of this Order, the Defendant shall not begin originating loans through mortgage brokers without first providing notice to the United States and implementing policies and monitoring designed to prevent and detect fair lending violations by these originators.

30.    Nothing in this Order shall excuse the Defendant's compliance with any currently or subsequently effective provision of law or order of a regulator with authority over the Defendant that imposes additional obligations on the Defendant.

31.    In the event that any disputes arise about the interpretation of or compliance with the terms of this Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. If either party reasonably believes that the other party has violated any provision of this Order, it will provide the other party written notice thereof and allow 30 days to resolve the alleged violation before presenting the matter to this Court. In the event of either a failure by the Defendant to perform in a timely manner any act required by this Order or an act by the Defendant in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

32.    The Defendant's compliance with the terms of this Order shall fully and finally resolve all fair lending claims of the United States that have been or could have been raised in the Complaint relating to any violations that arise out of or relate to the Complaint's allegations of racial disparities in loan prices, including all claims for equitable relief and monetary damages

and penalties. Each party to this Order shall bear its own costs and attorneys' fees associated with this litigation.

    33.    The Court shall retain jurisdiction for the duration of this Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

SO ORDERED, this _11th_ day of _January_, ~~2010~~ _2011_.

_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby apply for and consent to the entry of this Order:

**For Defendant PrimeLending**

PAUL F. HANCOCK
Florida Bar Number 0140619
K&L Gates LLP
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, Florida 33131-2399
Email: Paul.Hancock@klgates.com
Phone: 305-539-3378
Fax: 305-358-7095

**For Plaintiff United States**

STEVEN H. ROSENBAUM
Chief

JON M. SEWARD
Deputy Chief

DANIEL P. MOSTELLER
Trial Attorney
North Carolina Bar Number 36958
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W. – NWB
Washington, D.C. 20530
Email: Daniel.Mosteller@usdoj.gov
Phone: 202-305-0053
Fax: 202-514-1116

APPENDIX A

# We do Business in Accordance with Federal Fair Lending Laws

## UNDER THE EQUAL CREDIT OPPORTUNITY ACT, IT IS ILLEGAL TO DISCRIMINATE IN ANY CREDIT TRANSACTION:

### On the basis of race, color, national origin, religion, sex, marital status, or age;

### Because income is from public assistance; or

### Because a right has been exercised under the Federal Consumer Credit Protection Laws.

## IF YOU BELIEVE YOU HAVE BEEN DISCRIMINATED AGAINST, YOU SHOULD SEND A COMPLAINT TO:

Federal Reserve Consumer Help          OR
PO Box 1200
Minneapolis, MN 55480
Tel: 1-888-851-1920
Website:
http://federalreserveconsumerhelp.gov

U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement
Section
Washington, DC 20530
Tel: 1-800-896-7743
Website:
http://www.usdoj.gov/crt/housing

## **APPENDIX B**

Employee Acknowledgment


     I acknowledge that on _____, I was provided copies of the Consent Order entered by the Court in United States v. PrimeLending, (N.D. Tex.), and the loan policies developed pursuant thereto. I have read and understand these documents and have had my questions about these documents answered. I understand my legal responsibilities and shall comply with those responsibilities.


_____
Signature

_____
Print Name

_____
Job Title

_____
Date

**APPENDIX C**

Employee Training Certification

I certify that on _____, I received training with respect to my responsibilities under the Consent Order entered by the Court in United States v. PrimeLending, (N.D. Tex.), and the federal fair lending laws. I have had the opportunity to have my questions about them answered. I understand my legal responsibilities not to discriminate under the federal fair lending laws, including the Equal Credit Opportunity Act and the Fair Housing Act, and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Job Title

_____
Date

## APPENDIX D

### Release

In consideration for the parties' agreement to the terms of the Consent Order entered in United States v. PrimeLending, (N.D. Tex.), and the payment to me of $_____, pursuant to the Consent Order and effective upon that payment, I hereby release and forever discharge all claims, rights, remedies, and recoveries related to the facts of housing and credit discrimination in the origination of loans secured by residential real estate at issue in the litigation referenced above, and release and forever discharge all claims, rights, remedies, and recoveries arising from housing and credit discrimination alleged in that litigation in connection with the origination of my loan(s), known and unknown, up to and including the date of execution of this release.

I understand that this releases those claims, rights, remedies and recoveries against PrimeLending, and against any and all related entities, parents, predecessors, successors, subsidiaries, and affiliates, and against any and all of their past and present directors, officers, agents, managers, supervisors, shareholders, and employees and their heirs, executors, administrators, successors in interest, or assigns.

Executed this ___ day of _____, ____.

_____
Signature

_____
Print Name

_____
Address